Tommie J. SMITH, Gregory Resnover, Earl I. Resnover, Appellants,

v.

STATE of Indiana, Appellee.

No. 382 S 116.

Supreme Court of Indiana.

Feb. 27, 1985.

George K. Shields, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-Appellants Tommie J. Smith, Gregory Resnover and Earl Resnover were jointly tried by a jury in the Marion County Superior Court, Criminal Division I, and were found guilty of class B felony conspiracy to commit robbery, class A felony robbery, and murder. They subsequently were sentenced by the trial judge on the counts of robbery and murder only. The trial judge sentenced each defendant to a term of sixty years imprisonment for the murder conviction and to twenty years imprisonment for robbery, ordering said terms to be served consecutively. Nine issues are raised for our consideration in this direct appeal as follows:

1. denial of motion for severance;

2. admission into evidence of an autopsy photograph;

3. denial of motion to sequester the jury;

4. refusal to provide funds for Defendants to hire a private investigator;

5. refusal to dismiss court appointed counsel of Earl Resnover and Tommie J. Smith;

6. denial of motion for change of venue from the county;

7. refusal to give final instructions regarding Earl Resnover's decision to testify in his own behalf;

8. impeachment of Earl Resnover by reference to an expunged federal conviction; and

9. consideration by trial court of the expunged federal conviction while sentencing Earl Resnover.

On August 4, 1980, a Brink's guard, William Sieg, was robbed and killed while making a pickup at the K-Mart Store at 4150 North Keystone Avenue, Indianapolis. All three defendants were implicated in said robbery and murder and several eyewitnesses made identifications. Gregory Johnson and Ernest Davis testified for the State pursuant to plea agreements and stated that they, along with Earl Resnover, Gregory Resnover and Tommie Smith discussed robbing a Brink's truck. They fol-

lowed Brink's trucks on their routes and were familiar with the K-Mart stop at 4150 N. Keystone Avenue. Employees of the store testified that they saw Earl Resnover in the store two weeks prior to the robbery and also on the day of the robbery. On the day of the robbery, Stella McCray, a K-Mart employee, saw Gregory Resnover and Earl Resnover, whom she knew from grade school, come into the store at about 1:30 p.m. Ruth Vance testified that she saw Gregory Resnover pull a gun on victim Sieg and shoot him. Other witnesses saw Gregory Resnover and Tommie Smith flee the store with the bags of money carried by victim Sieg at the time of the robbery.

## I

All three Defendants claim that the trial court abused its discretion by failing to grant their separate motions for severance. Each assigned different reasons in support of his request to be tried individually. Earl Resnover contended that his co-defendants made out-of-court admissions regarding the commission of the crimes alleged in the informations and he believed these admissions would be prejudicially attributed to him. Smith indicated that the extent of pretrial publicity regarding the reputation of the Resnover family would prejudice his defense if he was forced to stand trial with Gregory and Earl Resnover. Gregory Resnover maintained that the complexity of the evidence to be presented at trial would confuse the jury. He additionally believed that out-of-court admissions by his co-defendants would be prejudicially attributed to him by the jury.

Ind.Code § 35–3.1–1–11(b) (Burns 1979) [repealed effective September 1, 1982] provides for the severance of defendants when one of the defendants has made an out-of-court statement which refers to the moving defendant but is not admissible as evidence against the moving defendant. This provision of Ind.Code § 35–3.1–1–11(b) is not applicable in this case, however, since no out-of-court statements or admissions made by any of the three defendants were put into evidence in this trial. Ind.Code § 35–3.1–1–11(b) further provides: "In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant." Ind.Code § 35–3.1–1–12(b) (Burns 1979) [repealed effective September 1, 1982] provides that a defendant may renew his motion for separation on the same grounds raised prior to trial at anytime before or at the close of the presentation of the evidence during trial. This statute further provides that a failure to renew the motion at such time is a waiver of said remedy. None of these defendants renewed their motions for severance during or at the close of all the evidence and they therefore waived any claim of error in that regard. Ind.Code § 35–3.1–1–12(b). *See also Dorton v. State,* (1981) Ind., 419 N.E.2d 1289; *Lee v. State,* (1979) Ind.App., 397 N.E.2d 1047, *cert. denied* (1980) 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245.

There is no showing here that the facts in this case were so complicated that the jury could have confused what each defendant did during the commission of these crimes. Each defendant was identified as to his role in these crimes by the various eyewitnesses to the event or by those with whom the defendants had discussed the perpetration of the acts prior to or after the commission of these crimes. Mary Rivers testified that all three defendants planned the robbery and disclosed that Earl Resnover was to drive the car. A number of K-Mart employees identified Defendants Smith and Gregory Resnover as the men who ran from the store carrying money bags. Ruth Vance testified that the man wearing a Hawaiian shirt, whom she identified as Gregory Resnover, shot the Brink's guard. There was, therefore, no confusion as to which person did what so that any of the defendants was prejudiced in this regard.

In *Johnson v. State,* (1981) Ind.App., 423 N.E.2d 623, *trans. denied,* Judge Hoffman

noted the following with respect to a defendant's fair trial rights during multiple defendant litigation:

"A defendant is not entitled to a separate trial as a matter of right merely because damaging evidence of the actions of a co-defendant reflects, by implication, on her, since there is no constitutional right to be protected from damaging evidence. [citations omitted] The trial court does not abuse its discretion in refusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts. [citations omitted]"

*Johnson*, 423 N.E.2d at 629. Defendants point to no specific point in the testimony that was prejudicial to any of their separate causes and that would not have been admitted had they been tried separately. There is, therefore, no showing that the trial court abused its discretion by failing to grant separate trials to any of these defendants.

## II

■ Defendants next claim the trial court committed harmful error when it admitted into evidence State's Exhibit 2, an autopsy photograph which depicted the stomach wound of the decedent, William Sieg. The State contended the exhibit was admissible for the purpose of illustrating the wound the victim received and to establish the victim's cause of death. The trial court noted that even though there had been a stipulation that the person depicted in the photograph was the person named in the information, Exhibit 2 portrayed the wound in the victim's abdominal area and was probative evidence properly to be shown to the jury. Furthermore, a pathologist, Dr. Nordschow, testified regarding the decedent's wounds and cause of death and it is apparent that the exhibit shed light on his testimony and therefore was relevant to the question of the means by which the victim was killed. The photo-

graph was not unduly gruesome or suggestive. This Court has many times held that the key to determining whether reversible error has been committed is whether the prejudicial effect of the photograph outweighs its relevancy. *Stewart v. State*, (1982) Ind., 442 N.E.2d 1026; *Loy v. State*, (1982) Ind., 436 N.E.2d 1125. Such was not the case here and the trial court committed no error by permitting the admission of Exhibit C.

## III

All three defendants also contend that the trial court committed error by denying their respective motions to sequester the jury during the pendency of the trial. They first assert that the trial court is without discretion to refuse a timely motion to sequester the jury in a case where the death penalty could be charged. Secondly, Defendants assert that even if this Court finds that the trial court's decision regarding sequestration was not mandatory, an abuse of discretion nonetheless was committed by the trial court's refusal of their motions. This contention is based on the fact that there was a pervasive amount of pretrial publicity surrounding this case which should have compelled the trial court to ensure that all jurors not be exposed to additional information provided by the news media during trial.

■ Defendant's first claim is based on our ruling in *Lowery v. State*, (1982) Ind., 434 N.E.2d 868, *reh. denied*. *Lowery* does not support their contention, however, since we held in *Lowery* that sequestration of the jury is mandatory upon request *only* in those cases in which the defendant faces the potential sentence of death. The potential for a death sentence exists only when the prosecutor specifically seeks the death penalty by filing a special charging instrument pursuant to Ind.Code § 35-50-2-9(a) (Burns 1979). Here the prosecutor exercised his discretion and did not seek the death penalty sentence for any of the three defendants. It was therefore not mandatory that the jury be sequestered but was

rather a matter of the trial judge's discretion. *Lowery, supra; Cobb v. State,* (1980) 274 Ind. 342, 412 N.E.2d 728, *reh. denied* (1981).

■ The record in the instant case shows that after the jury was selected, the trial court admonished the jury regarding their duties and specifically instructed the jury about reading newspapers or listening to radio or television broadcasts. The trial judge also questioned the jurors prior to the commencement of the presentation of evidence about whether they had heeded his admonition. The trial judge then reminded the jury of his admonishments in this regard. The trial judge repeated his admonishments each morning and sought from each of the jurors assurance that they had complied with them. The trial judge also reminded the jury to focus only on the evidence which was presented at trial. Defendants point to no particular instances which demonstrate any prejudice resulting from the jury's conduct other than to generally claim they should have been sequestered. It is apparent to us that the trial court handled this particular problem in a prudent and proper way thereby ensuring that each of these defendants had a fair and impartial trial. We have been shown no abuse of discretion that could be attributed to the trial court's failure to sequester the jury and there is, therefore, no error in this regard.

### IV

All three defendants asked the trial court to appoint a private investigator to assist in the preparation of their defenses at public expense. The trial court refused. Defendants now claim that since they were unable to adequately prepare for trial due to the trial court's refusal to appoint an investigator, they were denied the effective assistance of counsel required by the Sixth Amendment of the United States Constitution.

■ The request for an investigator primarily was directed to the finding of alibi witnesses. Defendant Smith made reference to checking train schedules, however, the record does not reveal that the prosecutor presented any testimony with respect to train schedules during the trial. Furthermore, with reference to alibi witnesses, the record discloses that five witnesses testified at the trial for the defendants. No argument is made that any particular alibi witness was not called on behalf of the defendants or that any particular alibi witnesses were known to exist that might have been found and presented by an investigator. General comments in an appellant's brief that an investigator could have assisted in the preparation of an alibi defense are not adequate to support a claim of prejudice arising from the trial court's decision to refuse such a request. We previously have held that a criminal defendant has no right to the appointment of special investigators or expert witnesses and that the need for furnishing such aid rests in the sound discretion of the trial court. *Craig v. State,* (1983) Ind., 452 N.E.2d 921; *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103. Defendants have not demonstrated that the trial court abused its discretion to the extent that reversible error is presented.

### V

Defendants Gregory Resnover and Tommie Smith argue that the trial court abused its discretion by failing to discharge their court appointed counsel and appoint new counsel. Smith further argues that an abuse of discretion was committed when his request for *pro se* representation was denied by the trial court.

The record shows that Defendant Gregory Resnover filed his motion to dismiss appointed counsel on September 10, 1981, while Smith filed his on September 15, 1981. The trial court conducted a hearing on these requests on September 15, 1981, and denied the requests. Trial by jury commenced on September 21, 1981.

■ At the outset, we note the defendants concede that the standard of review generally applied to trial court actions regarding the appointment of counsel for

indigent criminal defendants is one of discretion and will be reviewed only for an abuse of that discretion. The right to counsel in a criminal proceeding does not mean that the defendant has an absolute right to be represented by counsel of his own choosing. *Harris v. State*, (1981) Ind., 427 N.E.2d 658; *State v. Irvin*, (1973) 259 Ind. 610, 291 N.E.2d 70. In *Irvin*, this Court noted that the services of an attorney appointed by the trial court may not be forced upon a pauper defendant but, if the defendant refuses to be represented by the appointed counsel, then the defendant must find some method to employ his own counsel or proceed *in propria persona. See also Duncan v. State*, (1980) 274 Ind. 457, 412 N.E.2d 770, *reh. denied* (1981). The defendant may not arbitrarily compel a trial court to discharge competent appointed counsel.

■■ Both Defendants Smith and Gregory Resnover expressed dissatisfaction with their appointed counsel primarily based on counsel's performance in another related trial in which both received sentences of death. The trial judge noted in his discussion with counsel during the hearing on September 15 that this cause had been pending for eight or nine months and that he believed the defendants just did not want to go to trial and were using this method to further delay the trial. The trial court found that trial counsel was not incompetent and that defendants made no showing that there was a valid reason for their discharge.

■■ Defendant Smith moved to represent himself *pro se* on the morning of trial, September 21, 1981. This Court considered an identical claim and held:

"Appellant now claims that the trial court erred pursuant to the holding of the United States Supreme Court in *Faretta v. California*, (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. The issue presented here was decided by this Court in *Russell v. State* (1978) [270] Ind. [55], 383 N.E.2d 309, when a similar motion was made by Defendants on the morning of trial. In *Russell* this Court held that

a decision to proceed *pro se* is relinquishment of Sixth Amendment right to counsel. We held that a hearing on the question of defendant's self-representation need be had only if such right is properly asserted by clear and unequivocal request *within a reasonable time prior to the first day of trial.* We further held that requests on the morning of trial are *per se* untimely:

'It is one thing to recognize that this right exists as a matter of the defendant's considered will and intelligent choice, as discussed in *Faretta;* it is another thing to take an absolutist view of the personal autonomy interest which would enshroud last minute whim and caprice as a constitutional guarantee.'

[*Russell*, 270 Ind. at 62,] 383 N.E.2d at 314."

*Dixon v. State*, (1982) Ind., 437 N.E.2d 1318, 1321 (emphasis added). As the State points out, the Record discloses that Smith appeared to equivocate on his request hinging it at first on receipt of all discovery and later on the grant of a continuance. He finally asserted that he would go to trial without counsel and without time to prepare. The trial court heard Smith on this motion and refused to let Smith represent himself at this late hour. There is no showing that the trial court abused its discretion in making such ruling.

## VI

■■ All three defendants next claim that the trial court abused its discretion when it denied their motions for change of venue from the county which alleged that the pervasive media coverage of the case might preclude the selection of an impartial jury. Defendants assert that many of the prospective jurors had, in fact, heard about the case. This Court has discussed the elements required for a change of venue predicated on pretrial publicity as follows:

"In addition to demonstrating the existence of adverse publicity, it was incumbent upon the defendants to establish that the potential jurors were unable

to set aside their preconceived notions of guilt and to render a verdict based upon the evidence. *Sage v. State,* (1981) [275] Ind. [699], 419 N.E.2d 1286, 1287; *Drollinger v. State,* (1980) [274] Ind. [5], 408 N.E.2d 1228, 1235. Even if potential jurors had been exposed to pretrial publicity concerning the defendants' case that alone is insufficient to establish prejudice unless it is also demonstrated that the jurors were unable to set aside any preconceived notions they might have had. *Pine v. State,* (1980) [274] Ind. [78], 408 N.E.2d 1271."

*Walker v. State,* (1983) Ind., 444 N.E.2d 842, 846.

Defendants claim in their brief that because almost all of the prospective jurors had heard something about this case and the related murder of a police officer for which Defendants were tried previously, the jury could not render an impartial verdict. Defendants have not, however, established that the jurors selected to decide this case were unable to set aside any preconceived notions regarding Defendants' guilt. All jurors indicated that they would be able to decide the case on the basis of the evidence presented in the courtroom. Each was asked whether any preconceived notion would prevent him or her from rendering an impartial decision based only on the evidence and there is no showing that any of them had said that they could not or that any indicated that they even had any such preconceived notions. As we have noted, the trial court carefully admonished the jury each day to refrain from reading or listening to the news media accounts of the trial. Defendants make no showing that any of the jurors violated the admonishments given by the trial court or that there is any evidence of any preconceived notions held by any of the jurors other than a general claim that there was such pervasive coverage that influence of the jury must be presumed. It appears the trial judge properly handled this problem and we find no abuse of discretion which merits reversal.

## VII

Earl Resnover claims that the trial court erred by refusing to give his tendered instructions 27 and 28 which referred to his United States Constitution, Fifth Amendment, right against self-incrimination. Earl Resnover testified at trial in his own behalf while Gregory Resnover and Tommie Smith did not. When Earl Resnover tendered his instructions 27 and 28, Gregory Resnover and Smith objected. The trial court made the following notation on the tendered instructions: "Not given because of defendants Tommy Smith and Gregory Resnover's objections." It is clear that a defendant who does not testify is entitled to an instruction which indicates that the jury must not draw an adverse inference from that defendant's failure to testify if the defendant requests that such an instruction be given. *Carter v. Kentucky,* (1981) 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241. Further, this Court has held that a trial court commits reversible error by reading an instruction to the jury regarding a defendant's failure to testify when that defendant objects to the instruction. *Hill v. State,* (1978) 267 Ind. 480, 371 N.E.2d 1303; *Gross v. State,* (1974) 261 Ind. 489, 306 N.E.2d 371. Thus, the trial court was put into an untenable situation by the conflicting requests of these defendants. As the State points out, although it is clear that defendants who do not testify have a right to prevent the trial court from instructing the jury on the subject, it is not clear that a defendant who does testify has an overriding right to have the jury instructed on the subject. It is the State's contention that when Earl Resnover took the stand to testify, he waived his right against self-incrimination and therefore no longer had a right to insist that the jury be instructed that he had such a right which he relinquished. The State was unable to find any authority for this proposition but correctly points out that no authority is furnished by Defendant Earl Resnover either. We find that, under the circumstances, the trial court acted properly by refusing to give the contested instructions since Earl Resnover willingly took the

stand and the other two defendants objected to the tendered instructions. We accordingly find no error on this issue.

### VIII and IX

Earl Resnover next claims that he was improperly impeached during his cross-examination by the prosecutor because reference was made to his prior federal conviction for unlawful possession of a sawed-off shotgun. He argues the conviction had been expunged under 18 U.S.C. § 5021(a), the Federal Youth Corrections Act, and thus was unavailable for any purpose including impeachment. He also claims that the trial court relied on this expunged federal conviction to justify its imposition of aggravated and consecutive sentences for his murder and robbery convictions.

■ The State points out, and the record shows, that Defendant Earl Resnover first brought this federal conviction into the record by his own testimony during direct examination when defense counsel asked Earl Resnover about a federal robbery conviction for which he was sentenced pursuant to the Federal Youth Corrections Act. It is the State's contention that when Earl Resnover brought this subject to light, he opened up this area of inquiry for the prosecutor to develop on cross-examination. The State relies on the following:

> "Once a defendant inquires into a subject on cross-examination, the state is entitled to probe the matter further on redirect to avert a false or misleading impression. *Estep v. State,* (1979) [271] Ind. [525], 394 N.E.2d 111. Once a party opens a subject on cross-examination, the opposing party may pursue that subject on redirect examination. *Woodford v. State,* (1980) [273] Ind. [487], 405 N.E.2d 522. [Defendant] Cronk, having opened this issue, could not have it closed at his convenience. *Drollinger v. State,* (1980) [274] Ind. [99], 409 N.E.2d 1084."

*Cronk v. State,* (1983) Ind.App., 443 N.E.2d 882, 884, *trans. denied.* Since Defendant Earl Resnover brought the subject of the federal conviction into the record during his direct examination, he cannot now be heard to complain that the State further pursued it on cross-examination. The trial court did not abuse its discretion by denying Earl Resnover's motion for mistrial based on such cross-examination.

■ Contrary to Defendant Earl Resnover's contention, the trial court did not directly refer to his federal conviction in finding aggravated circumstances to justify the imposition of increased sentences for Defendants' convictions and for ordering consecutive sentences. Among the aggravating circumstances the trial court referred to were the nature of this offense and the manner in which it occurred. The trial court described the crimes as "a boldly and ruthlessly planned and executed robbery of a Brink's guard," which required a severe sentence so as not to seriously depreciate the seriousness of the offenses. The trial judge also referred to Defendant Earl Resnover's stolen property conviction in 1974, his violation of the Indiana Controlled Substances Act in 1974, and further, his numerous arrests for burglaries and robberies. Earl Resnover had, at the time of his sentencing in this case, other convictions for theft and illegal drug possession that were totally unrelated to the felony conviction which had been expunged. There was, therefore, sufficient evidence of aggravating circumstances to justify the trial judge's imposition of the additional sentences and his imposition of consecutive sentences. *See Page v. State,* (1981) Ind., 424 N.E.2d 1021, *on remand,* (1982) Ind., 442 N.E.2d 977, *reh. denied* (1983). No error is presented on this issue.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.