**Charles BLACKNELL, Benjamin Hagan, Appellants,**

v.

**STATE of Indiana, Appellee.**

No. 985S384.

Supreme Court of Indiana.

Jan. 21, 1987.

Rehearing Denied March 20, 1987.

Scott L. King, Gary, for Charles Blacknell.

Diane McNeal, Appellate Division, Crown Point, for Benjamin Hagan.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-Appellants Charles Blacknell and Benjamin Hagan were convicted at the conclusion of a jury trial in the Lake Superior Court of robbery, a class B felony; criminal confinement, a class B felony; rape, a class A felony; and robbery, a class B felony. Both were sentenced to ten (10) years for each count of robbery and criminal confinement, to be served concurrently with a thirty (30) year term for the rape; they were also sentenced to another ten (10) year term for the second robbery, to be served consecutively to the other terms. The following issues are raised on direct appeal:

1. Appellant Blacknell's motion for a new trial based on newly discovered evidence;

2. identification evidence;

3. the trial court's refusal to allow certain testimony of Witnesses Rooks and Harris;

4. Appellant Blacknell's motion for a change of judge;

5. selection of the alternate junior;

6. Appellant Hagan's motion for change of venue from the county;

7. Appellant Hagan's motion for severance; and

8. Appellant Hagan's motions for mistrial.

On October 5, 1984, between 12:00 and 12:30 p.m., Reverend Jenkins was in his church office. He answered a knock on the door, and a man pulled out a gun, announced a hold-up, forced Jenkins to lie on the floor, and bound him with the telephone cord. The man watched over Jenkins, repeatedly telling Jenkins not to look at him, while two companions carried various items out of the office, including a safe and a calculator. The men took Jenkins' car keys and left in his 1981 green Oldsmobile.

Around 8:15 that evening, L.M. was pulling her 1980 white Cadillac into her garage when she was accosted by a man who put a gun to her head and forced her back into the car. Another man appeared, put something heavy in the trunk, and also got into the car. The men forced L.M. to get on the floor of the back seat. As they were driving away, L.M. noticed a green car in the

alley. The men drove around for about thirty (30) minutes, took L.M.'s jewelry, forced her to take off her clothes, and then each man raped her. They gave some of her clothes back and allowed her to run off.

Two days later, Lake County Police Officer Huttle noticed a 1980 white Cadillac with two occupants, and ran a license plate check. He found out the car was stolen, and turned on his lights to signal the driver to stop. The vehicle made an escape attempt, but went off the road. The two occupants attempted to flee, but Huttle apprehended them. The driver was identified as Appellant Blacknell, and the passenger as Appellant Hagan. Reverend Jenkins' car was found outside L.M.'s residence. The next day, two lineups were held at which Jenkins and L.M. both selected both appellants from respective lineups. Both automobiles were dusted for fingerprints. Prints were found of Appellant Hagan and of one Wendell Rooks. Appellant Blacknell presented an alibi defense, that he was attending a funeral. Appellant Hagan testified in his own behalf and denied committing the crimes.

I

At the hearing on his motion to correct errors, Appellant Blacknell offered testimony of Theodell McGowan and Kevin Nash. McGowan was a cellmate of co-defendant Hagan, and allegedly heard Hagan say that Blacknell had nothing to do with the crimes. Nash testified that he had taken part in the robbery of Reverend Jenkins, that Hagan and Rooks took part, and that Blacknell was not involved. He further testified that he had heard incriminating statements from Rooks and Hagan regarding the rape and robbery of L.M. Blacknell moved for a new trial based on this evidence, which motion was denied.

 In order to obtain a new trial based on newly discovered evidence, the evidence must have been discovered since trial; it must be relevant, credible, and material; must not be cumulative, merely impeaching, privileged, or incompetent; due diligence must have been used to dis-

cover it in time for trial; and it must be probable that a different verdict will result. *Hestand v. State* (1986), Ind., 491 N.E.2d 976, 978–979. Furthermore, the trial court may consider the weight a reasonable trier of fact would give the new evidence, and may also evaluate its probable impact on a new trial in light of all the facts and circumstances of the original trial. *Emerson v. State* (1972), 259 Ind. 399, 287 N.E.2d 867, 871–872. The decision whether to grant the new trial will be reversed only if the trial court abused its discretion. *Thompson v. State* (1986), Ind., 492 N.E.2d 264, 276, *reh. denied* (1986).

 The trial court properly "gave no credibility whatsoever" to McGowan, since he had been convicted several times on twenty-six (26) counts of theft and had gone by various aliases. *Abner v. State* (1985), Ind., 479 N.E.2d 1254, 1263. The trial court gave further rationale for not granting the new trial due to inconsistencies of Nash's testimony with an earlier deposition he had given and with other witnesses, including Appellant Blacknell. Such was within the discretion of the trial court and is well-supported by the record.

II

Appellant Blacknell maintains the trial court erred in permitting the in-court identification of him by Reverend Jenkins and L.M. because the identifications were based on unduly suggestive pre-trial lineups. His only argument is that he was the only person in the lineups that fit the height of the victims' assailant.

 The present issue is whether there was a substantial likelihood of irreparable misidentification, and whether an independent basis for the in-court identification was lacking. *Deamus v. State* (1985), Ind., 479 N.E.2d 1319, 1322. The record reveals that L.M. described her assailant as being 5'9" tall, while Reverend Jenkins said the man was a little over 6'0" tall. The record further reveals that the lineup contained a range of heights from shorter to taller than Appellant Blacknell. There was nothing

unduly suggestive about the lineup. Furthermore, the testimony of both Reverend Jenkins and L.M. reveals a sufficient independent basis for the identification, as both witnesses were confronted face to face by Blacknell.

Appellant Hagan argues that the identification evidence was insufficient to convict him because the victims who identified him saw the perpetrator's face for only "a brief moment." This argument seeks only to have us reweigh the evidence; it attacks the weight to be given the identification evidence, which is a decision within the discretion of the jury. We find no error.

### III

During direct examination of Appellant Blacknell, Defense Counsel attempted to ask him what he had told Detective Brooks shortly after being arrested regarding Wendell Rooks. Co-defendant Hagan and the State objected on hearsay grounds. Defense Counsel made an offer to prove that Blacknell would have testified that Rooks had admitted his involvement in the crimes to Blacknell over the phone. The court ruled that neither Blacknell nor Rooks could testify as to the telephone call, and Defense Counsel withdrew the question.

■ By withdrawing the question, Appellant Blacknell has waived any alleged error here. Furthermore, although Blacknell urges us to find the testimony admissible, he recognizes that not all admissions against penal interest are exceptions to the hearsay rule. *Taggart v. State* (1978), 269 Ind. 667, 668–669, 382 N.E.2d 916, 918. Blacknell posits that *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, holds that due process requires the admission of this testimony. In *Chambers,* the Supreme Court was warning against the "mechanistic" use of the hearsay rule as to "defeat the ends of justice." More specifically, the Court held that such a hearsay statement must bear "persuasive assurances of trustworthiness." *Id.,* 400 U.S. at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. No such showing

of Rooks' trustworthiness was made here. The trial court did not err in sustaining the hearsay objection.

Appellant Blacknell testified on direct examination that he went to Melvin Hudson's funeral on the day of the crimes. He presented other witnesses who corroborated this testimony. Blacknell stated he thought the cemetery was called Oak Hill, but knew only that it was located in Glen Park, near Interstate 65. On rebuttal, the State presented testimony that there was no record of Hudson being buried at Oak Hill Cemetery. On surrebuttal, Blacknell offered the testimony of Erlene Harris, Hudson's mother, that the burial site had been changed from Oak Hill to Evergreen Cemetery, and that Blacknell had been present. The trial court limited Harris' testimony to an explanation of the change in the burial site; the court ruled any further testimony would exceed the scope of the rebuttal testimony.

■ The conduct of rebuttal and surrebuttal, like direct and cross examination, are matters within the discretion of the trial court. Here, the trial court properly limited surrebuttal testimony to the refutation of that presented on rebuttal testimony.

### IV

During the pendency of his motion to correct errors, Appellant Blacknell applied for a change of judge because the trial judge previously had filed a disciplinary complaint against his attorney regarding a newspaper article that appeared in a local paper prior to trial. The trial court denied the motion. Blacknell argues that the subject matter of Canon 3(C)(1) of the Code of Judicial Conduct constitutes "other cause" for obtaining a change of judge as used in Ind.Code § 35–36–5–2(5). Canon 3(C)(1) states:

"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned ..."

Blacknell contends that due to the trial judge's filing the disciplinary complaint, his

impartiality might reasonably be questioned to the extent he should have excused himself. Blacknell concedes the absence of precedent to support such an argument, as well as our standard that, generally, there must be a showing of actual prejudice against a litigant in order to mandate recusal by a judge. He further concedes there has been no showing of actual prejudice.

■ Counsel's statement to the newspaper was in direct violation of Disciplinary Rule 7–107. Under Disciplinary Rule 1–103, the trial judge was obligated to report the violation. The trial judge's action is in no way evidence of impartiality. There is absolutely no evidence that it resulted in Blacknell being treated unfairly. There is no error in the trial court's refusal to appoint a new judge. Furthermore, the parties were informed during *voir dire* that the trial judge intended to refer the matter to the Disciplinary Commission. Any motion for a new judge based on this ground should have been made at that time. Ind. R.Crim.P. 12.

## V

After a twelve-member jury was selected and secluded in the jury room, the trial court questioned a prospective alternate juror who volunteered, in the presence of the panel of prospective alternates, that Appellant Hagan, as an eight or nine year old child, had accidentally shot her brother in the chin with a gun. That potential juror was excused. Hagan moved for a mistrial, which was denied. He objected to the selection of any alternate juror from the panel. One alternate juror was selected from the panel. This alternate stated she could render a fair verdict despite having heard about the shooting. The trial court admonished her not to relate that information to the other jurors, and instructed the jury as to the non-participatory function of the alternate. Hagan moved that the alternate juror not be allowed to sit in the jury room during deliberations, which motion was denied.

■ Hagan contends he was placed in grave peril by these facts, raising the spec-ter that the alternate juror could have relayed the information about the shooting to the jury panel. This type of speculation does not constitute grounds for reversal. The alternate stated that the knowledge would not affect her, she did not participate in the deliberations, and the jury was instructed that she was not to participate. It is presumed that the alternate juror and jury heeded these admonishments and instructions. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, 1230, *cert. denied* (1986), —— U.S. ——, 106 S.Ct. 1500, 89 L.Ed.2d 900.

## VI

On the morning of trial, Appellant Hagan moved for a change of venue from the county due to an allegedly prejudicial newspaper article which had appeared locally the day before. The article detailed an interview with co-defendant Blacknell's attorney, which implicated Hagan and a third party, and indicated Blacknell was a victim of mistaken identity. This is the only publicity alleged to have been prejudicial. The trial court denied the motion for change of venue, and to correct any prejudice, excused all prospective jurors who had read or heard about the article. The jury which was selected was instructed not to look at the local newspapers.

■ In order to obtain a change of venue, it is incumbent upon a defendant to produce evidence of community bias or prejudice sufficient to convince the trial court that he could not obtain a fair trial in that county. The question is whether potential jurors had a preconceived notion of the defendant's guilt and whether they were able to set aside that notion and render a verdict based upon the evidence. It is insufficient to establish local prejudice unless there is a demonstration that jurors were unable to deliberate fairly. The decision whether a change of venue is warranted lies within the discretion of the trial court. *Slone v. State* (1986), Ind., 496 N.E.2d 401, 404.

Appellant Hagan has made absolutely no showing of the prejudice contemplated in *Slone.* In fact, any prospective jurors familiar with the article were excused, and the final jury panel was instructed not to read the newspaper. They are presumed to have obeyed this instruction. *Lowery,* Ind., 478 N.E.2d at 1230. Hagan's reliance on *Baniszewski v. State* (1970), 256 Ind. 1, 261 N.E.2d 359, is without merit. He has failed to show either the amount or the same effect of the pretrial publicity we found in that case. *Baniszewski* is distinguished from the present case on its facts.

### VII

Appellant Hagan maintains the trial court erred in denying his motion for severance. He argues that despite the fact that neither his nor co-defendant Blacknell's statements were admitted into evidence, the joint trial was extremely prejudicial due to: 1) pretrial publicity elicited by Blacknell's attorney; 2) Blacknell's testimony incriminating Hagan; and 3) inconsistent and adverse theories of defense raised by each co-defendant.

. We recently addressed this same issue in *Broadus and Dunville v. State* (1986), Ind., 487 N.E.2d 1298, 1302:

> "The decision to grant a motion for severance is within the trial court's discretion. *Brewer v. State* (1983), Ind., 449 N.E.2d 1091. The defendant's burden is to show a fair trial could not otherwise be had, not merely that severance would enhance the prospects for acquittal.... Further, to determine whether actual prejudice resulted from nonseverance, we look at what actually happened at trial. [Citations omitted.]"

Our inquiry here is confined to whether the complained of actions were so prejudicial as to deny Hagan a fair trial. *Id.* at 1303.

As stated above, Hagan's argument, alleging pre-trial publicity was prejudicial, is without merit. Therefore, the trial court's refusal to sever the trials due to the publicity was proper. Regarding Hagan's allegations of error due to co-defendant Blacknell's testimony incriminating Ha-

gan and his defense being adverse and inconsistent to Hagan's, a defendant has no constitutional right to be protected from damaging evidence. *McChristian v. State* (1979), 272 Ind. 57, 61, 396 N.E.2d 356, 359; *Baysinger v. State* (1982), Ind.App., 436 N.E.2d 96, 99, *reh. denied* (1982). Such protection would result in separate trials as a matter of right for all cases with more than one defendant. Furthermore, as in *Baysinger,* the co-defendant here took the stand and was available for cross examination, allowing his credibility to be assessed by the jury. *Baysinger,* Ind.App., 436 N.E.2d at 99.

### VIII

Appellant Hagan contends the trial court erred in twice denying his motions for mistrial. Co-defendant Blacknell's attorney questioned Hagan at trial regarding Hagan's reluctance to sign a *Miranda* rights waiver form. Hagan's attorney objected and moved for a mistrial. The trial court denied the motion for mistrial, but admonished the jury that Hagan was under no obligation to sign the waiver form.

The granting of a mistrial lies within the sound discretion of the trial court, and its determination will be reversed only where an abuse of that discretion can be established. The declaration of a mistrial is an extreme action and is warranted only when no other action can be expected to remedy the situation. To prevail, the defendant must show that he was placed in a position of grave peril to which he should not have been subjected. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 294, *reh. denied* (1986). Hagan has shown no reason why the court's admonition to the jury did not cure any alleged error; moreover, he has failed to show that he was ever placed in a position of grave peril which would warrant a mistrial. The trial court's admonition properly cured any harm caused by Blacknell's attorney.

Finally, Appellant Hagan maintains a mistrial should have been granted when co-defendant Blacknell refused to

provide him with discovery in compliance with a pre-trial discovery order. Hagan's argument is brief and general, and makes no mention to the record of a discovery order, motion for discovery, motion to compel, or motion for any sanctions due to failure to comply with discovery. His argument is so insufficiently presented that it leaves us with no direction on review. We therefore find the issue waived. *See Northern v. State* (1986), Ind., 489 N.E.2d 520, 522.

The trial court is affirmed.

GIVAN, C.J., and DeBRULER, DICKSON and SHEPARD, JJ., concur.