Attorney for appellant

Julie P. Verheye 

Mishawaka, Indiana

attorneys for appellee

Pamela Carter 

Attorney General of Indiana

Arthur Thaddeus Perry

Deputy Attorney General

IN THE

INDIANA SUPREME COURT

DORIAN LEE,

Appellant (Defendant  below),

v.

STATE OF INDIANA,

Appellee (Plaintiff  below).

)

) Supreme Court No.

) 71S00-9605-CR-00310

)

) 

)

)

)

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT

The Honorable Sanford M. Brook, Judge

Cause No. 71D08-9506-CF-00259

ON DIRECT APPEAL

SULLIVAN,  Justice.

On June 14, 1995, defendant, Dorian Lee, was charged with Murder;
(footnote: 1) Burglary,
(footnote: 2) a class B felony; three counts of Attempted Murder,
(footnote: 3) class A felonies; and Rape,
(footnote: 4) a class A felony.    Defendant was sentenced to 60 years for Murder, 15 years for Burglary, 40 years for each of the Attempted Murder charges, and 40 years for Rape.  The trial court ordered the defendant to serve consecutive sentences on all charges, except for Burglary and Rape, resulting in an aggregate sentence of 235 years.

Background

On June 12, 1995, defendant, along with two armed men, Terrance Mitchem and Michael Greer, broke and entered a home occupied by four adults.
(footnote: 5)  The defendant raped one of the female victims and participated in the shooting of all four victims.  One victim was killed, while the other three survived.  Relevant facts will be provided as needed.

Discussion

Defendant raises four issues on appeal:  (1)  whether the continuance of the trial violated defendant's right to a speedy trial; (2)  whether the trial court erred in denying a motion for a separate trial; (3)  whether there was sufficient evidence to support the jury's finding that the defendant committed rape while armed with a deadly weapon; and (4)  whether the trial court erred when it imposed enhanced and consecutive sentences.

I

Defendant contends that he was denied his right to a speedy trial when the trial court continued the trial date.  Trial in defendant's case was originally set for July 31, 1995.  Upon joining defendant's case with co-defendants Mitchem and Greer, trial was rescheduled for October 16, 1995.  The trial date was later continued from October 16, 1995, to December 4, 1995.  At the time the motion to continue was granted, defendant  objected to the continuance but on grounds unrelated to speedy trial rights.  As such, he has waived the right to assert on appeal any violation of his right to a speedy trial.  
Bradford v. State
, 675 N.E.2d 296, 302 (Ind. 1996); 
Holmes v. State
, 671 N.E.2d 841, 856 (Ind. 1996); 
Akins v. State
, 429 N.E.2d 232, 235 (Ind. 1981)(similar facts).  Nevertheless, we elect to review defendant's claim on the merits. 

Defendant is not claiming that his right to a speedy trial has been violated under Ind.Crim.Rule 4, but instead suggests that his constitutional guarantee thereto under art. I, § 12, of the Indiana Constitution has been violated.  In analyzing whether there has been a violation of the right to a speedy trial under our state constitution, Indiana has applied the analysis used in 
Barker v. Wingo
, 407 U.S. 514 (1972).  
See
 
Crawford v. State
, 669 N.E.2d 141, 145 (Ind. 1996); 
Wilburn v. State
, 671 N.E.2d 143, 148 (Ind. Ct. App. 1996) 
trans
. 
denied
; 
Scott v. State
, 461 N.E.2d 141, 143 (Ind. Ct. App. 1984).  This analysis employs four factors: (1) length of delay, (2) defendant's assertion of his right, (3) the government's reason for the delay, and (4) the prejudice to the defendant.  
Barker
, 407 U.S. at 530.  

The defendant was charged on June 14, 1995, and the original trial was set for July 31, 1995.  Upon an order joining defendant's case with his codefendants, trial was rescheduled for October 16, 1995.  After granting motions by the codefendants to continue, trial was finally set for December 4, 1995, and concluded on December 11, 1995.  Thus, the time between defendant's charge and the beginning of his trial was less than six months.  We find that the length of delay was not unreasonable.  
Cf
. Crim.R. 4(A) (requires that a defendant detained in jail be brought to trial no later than six months).   

In order to claim a constitutional violation of the right to a speedy trial, defendant must assert such right.  When the motion to continue the trial date was granted, defendant stated, "I want to make the Record clear that I'm not agreeing to a continuance,"  but never objected on the grounds that his right to a speedy trial was being violated.  Because defendant did not assert this right until after trial was complete, we find that defendant did not properly assert the right to a speedy trial.

We also find that the state did not unreasonably delay the trial.  Trial was originally rescheduled because the State was granted the motion to join the cases of all three defendants.  The second continuance was granted at the request of the two codefendants.  While the court was willing to proceed with defendant's case as scheduled by severing defendant from the codefendants, the State requested that the cases remain joined for the following reasons: (1) judicial economy, 
i.e.
, there was no reason to not try these defendants together because the evidence was the same in all three cases; and (2) to protect the victims from having to testify at trial on two occasions.  We find that the State's reason for this delay was not to burden defendant unreasonably.

The last factor, prejudice, is assessed in light of three interests which the right to a speedy trial was designed to protect:  (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  
Barker
, 407 U.S. at 532.  
See
 
Scott
, 461 N.E.2d at 143; 
Lahr v. State
, 615 N.E.2d 150, 153 (Ind. Ct. App. 1993).  "Indiana courts have placed the burden of demonstrating actual prejudice on the defendant to prove a speedy trial deprivation."  
Scott
, 461 N.E.2d at 143; 
Lahr
, 615 N.E.2d at 153.  
See
 
also
 
Wade v. State
,  279 Ind. 549, 551, 387 N.E.2d 1309, 1310 (1979).

Defendant has not provided us with any demonstration of prejudice except a contention that the delay resulted in a trial with the codefendants which in turn denied him the "opportunity to have the jury fairly determine his guilt or innocence due to the mutually antagonistic defenses of his co-defendants."   This is not the kind of prejudice which the right to speedy trial was designed to prevent.  The right prevents an impairment to a defense by protecting the defendant from such problems as the death or disappearance of witnesses during the delay or the inability of witnesses to recall events accurately after delay.  
See
 
Lahr
, 615 N.E.2d at 153 (citing 
Barker
, 407 U.S. at 532).  We find defendant was not prejudiced by the delay.

As none of the 
Barker v. Wingo
 factors point in defendant's favor, we conclude that defendant was not deprived of his right to a speedy trial under art. I, § 12, of the Indiana Constitution.

II

Defendant claims that the trial court committed reversible error when it refused to grant defendant's motion to sever his trial from his codefendants.  We disagree.

Several defendants may be joined in a single prosecution.  Ind. Code § 35-34-1-9 (1993).  However, upon a motion by defendant, the trial court may order a separate trial "whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."  Ind. Code § 35-34-1-11(b).  The trial court has discretion to grant or deny a motion for separate trials.  
Gordon v. State
, 609 N.E.2d 1085, 1088 (Ind. 1993); 
Underwood v. State
, 535 N.E.2d 507, 514 (Ind. 1989).  However, a trial court must grant severance of trials where there are mutually antagonistic defenses and the acceptance of one defense precludes the acquittal of the other.  
Underwood
, 535 N.E.2d at 514.  "Upon review, the trial court's decision is measured by what actually occurred at trial rather than what is alleged in the motion."  
Castro v. State
, 580 N.E.2d 232, 234 (Ind. 1991)(citing 
Rondon v. State
, 534 N.E.2d 719 (Ind. 1989)).  
See
 
Blacknell v. State
, 502 N.E.2d 899, 905 (Ind. 1987). 

In defendant's motion for a separate trial, defendant asserted that the codefendants, if they testified, would implicate defendant in the offenses charged against him and that such testimony would be mutually antagonistic to defendant's alibi defense.  Codefendant Mitchem did, in fact, testify and his testimony placed the defendant at the scene of the crime and revealed defendant's involvement in the crimes.  However,  "[t]he mere fact that one defendant implicates another does not entitle the latter to a separate trial," and furthermore, "there is not a constitutional right to be protected from damaging evidence."  
Castro
, 580 N.E.2d at 235 (citing 
Smith v. State
, 474 N.E.2d 973 (Ind. 1985)) .   
See
 
also
 
Holifield v. State
, 572 N.E.2d 490, 495 (Ind. 1991); 
McChristian v. State
, 272 Ind. 57, 61, 396 N.E.2d 356, 359 (1979).  "Such protection would result in separate trials as a matter of right for all cases with more than one defendant."  
Blacknell
, 502 N.E.2d at 905.  Furthermore, Mitchem's testimony was not the only evidence that implicated defendant in the crimes.  All three of the surviving victims testified that defendant was involved in the crimes being tried.  Therefore, there is no ground for reversal simply because one of the codefendants implicated the defendant.  

Defendant, however, contends that the defenses of the codefendants were mutually antagonistic to the defendant's alibi defense because the codefendants argued that (1) they lacked the requisite intent during the shooting as contrasted to defendant's intent and (2) the core of their defense was that defendant was the responsible party for the shooting.   Defendant asserts that proof that the defenses were mutually antagonistic lies in the fact that Mitchem was acquitted of the burglary charge.  Thus, defendant mistakenly contends that the jury must have believed Mitchem and rejected defendant's alibi defense.  

Mitchem testified that his original intent was to scare the victims and we will assume for purposes of analysis that, based on this testimony, the jury acquitted Mitchem of the burglary charge because he lacked the requisite intent to commit Burglary.
(footnote: 6)  However, the codefendants were found guilty of all other charges, indicating that the jury found the requisite intent necessary to commit these crimes.  Since the codefendants' defense of lack of intent failed, we need not determine whether such defense can be mutually antagonistic;  our review is only based upon what actually occurred at trial and not what was alleged in the motion.   

On the other hand, the codefendants also used the defense that defendant was responsible for the crimes.  During trial, Mitchem testified that it was defendant who told the victims to line up on the mat and that, after Mitchem finished shooting, he didn't see Greer but defendant was still shooting (and fired two more shots even after Mitchem suggested that they leave).  On direct examination, when Mitchem was asked what else defendant said during a conversation with one of the victims, Mitchem testified, "Mr. Lee wasn't leaving until somebody got shot."  The cross examination of Mitchem by defendant's attorney resulted in the following colloquy:  

Q: Mr. Mitchem, if I understand your testimony correctly, then you're essentially saying it's my client, [defendant], who changed the game plan for that night; is that right?

A: Yes.

Q: And that when you went over there you were just going over there to scare some people; is that right?

A: Yes.

(R. 1483-84.)

Although codefendant Greer did not testify at trial, his attorney made the following remarks during closing arguments:

Now maybe as Mr. Mitchem suggested, things didn't go as planned.  [Defendant] decided to go and do something that was not intended.  Maybe we heard [one of the victims] apparently talk back to him, and maybe [defendant] thought that was justification for changing the plans and actually shooting somebody.  But what was the intent of Mr. Greer?  Was he doing things knowing that [defendant] was now serious, that these weren't just threats to scare these folks to intimidate them, but now [defendant] had changed the scheme, it was now I am going to take somebody out.  (R. 1539.) . . . . The murder's the same thing.  Did Michael Greer know that [defendant] had changed the plan?  (R. 1540.) . . . . Michael Greer is the one that once some shots were fired said, "Let's go, let's go."  And he left.  I suggest that shows this was -- he suddenly found himself in a situation that he did not expect.  But it had suddenly become real.  It wasn't just plan and scaring people, somebody had changed the rules, upped the ante a lot, and he got out of there. [sic]

 

(R. 1541.)

Based upon Mitchem's testimony and closing arguments by Greer's attorney, it is clear that the codefendants were attempting to place the responsibility for the shooting upon defendant.  Defendant argues that the defenses were mutually antagonistic:  acceptance of the codefendants' defense that defendant was the responsible party precludes acceptance of defendant's alibi defense; and acceptance of defendant's alibi defense precludes acceptance of codefendants' not-responsible-party defense.  However,  even if this is a case of mutually antagonistic defenses, in order to prove abuse of discretion in the denial of a motion for separate trials, defendant must show actual prejudice.  
Castro
, 580 N.E.2d at 234. 

We do not find that the testimony and arguments provided by codefendants during trial resulted in actual prejudice to defendant.  As stated above, all three victims testified as to defendant's presence at the scene of the crime and the victims even testified as to defendant's role in the crime.  One victim testified that defendant yelled, "Man, get her down here, or somebody going to get a head-shot, and get her down here now." [sic]      A second victim testified that defendant made the following comment, "Before I leave here tonight, somebody is going to take a head-shot."  Finally, the third victim testified that "[he] heard [defendant] telling [Greer] to hurry up and get Janice downstairs or he was going to cap someone," and also testified that defendant pointed the gun at his head and said, "Maybe I should take him out first."  

   There was ample testimony by the victims to  indicate that defendant played a major role in the offenses charged.  Defendant has not presented any evidence indicating  how the trial with the codefendants was prejudicial, particularly, in light of the fact that other witnesses were able to testify to essentially the same facts presented by the codefendants during testimony and closing arguments.  Furthermore, defendant has not pointed to any specific testimony or evidence which would not have been admitted had defendant been tried separately.  
See
 
Smith v. State
, 474 N.E.2d 973, 977 (Ind. 1985).     

". . . While an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence, . . . a fair trial does not include the right to exclude relevant and competent evidence.  A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant."

People v. Hana
, 447 Mich. 325, 350, 524 N.W.2d 682, 692 (Mich. 1994) (quoting 
Zafiro v. U.S.
, 506 U.S. 534 (1993)). 

It is the defendant's burden to show that a fair trial could not otherwise be had, and "not merely that severance would enhance the prospects for acquittal."  
Blacknell
, 502 N.E.2d at 905 (citing 
Broadus and Dunville v. State
, 487 N.E.2d 1298, 1302 (Ind. 1986)).  Defendant has failed to meet this burden and  because "[t]here is a strong judicial policy in favor of joint trials where codefendants are charged with the same crime,"  
Castro
, 580 N.E.2d at 234, 235, we affirm the trial court's denial of the motion for separate trials. 

III

Defendant claims there was insufficient evidence to support a conviction for rape while armed with a deadly weapon and thus his sentencing should have been for a Class B felony, rather than a Class A felony.
(footnote: 7)  

Our court does not reweigh evidence when reviewing a claim for insufficiency of the evidence.  
Lampkins v. State
, No. 18S04-9609-CR-597, 1997 WL 356942, at * 7 (Ind. June 30,  1997); 
Cook v. State
, 675 N.E.2d 687, 692 (Ind. 1996).  "We will affirm a conviction if, after considering the reasonable inferences and probative evidence supporting the verdict, we conclude that a reasonable trier of fact could find each element of the charged crime beyond a reasonable doubt."  
Lampkins
, No. 18S04-9609-CR-597, 1997 WL 356942 at * 7 (quoting 
Cook
, 675 N.E.2d at 692).

We disagree with defendant that there was insufficient evidence to support a conviction of rape while armed with a deadly weapon.  During the testimony relating to the rape, although the victim never stated that defendant was armed during the rape,  when asked  how she knew it was defendant who held a particular gun which was identified at trial, she testified, "Because I saw him."  When asked if the defendant held the gun all during the night, she stated, "All through the night, yes."  Furthermore, codefendant Mitchem also testified that each of the defendants held his own gun when the women victims were told to disrobe.      

"It is clearly established that it is not necessary for a weapon to be held on the victim of a sex crime at all times in order to establish duress."  
Kelly v. State
, 452 N.E.2d 907, 911 (Ind. 1983)(citing 
Dean v. State
, 272 Ind. 446, 448, 398 N.E.2d 1270, 1272 (1980)).   Furthermore, "the weapon need not be displayed to establish the threat of deadly force."  
Lamb v. State
, 462 N.E.2d 1025, 1028 (Ind. 1984)(citing
 Ross v. State
, 429 N.E.2d 942, 944 (1982)).  In 
Dean
, where the testimony of the victim established that defendant held a knife to her at various times throughout the incident and threatened to kill her, her husband, and her sister, we found this evidence to be sufficient to sustain a conviction for a class A felony.  
Dean
, 398 N.E.2d at 1271.  In 
Davis v. State
, even though the knife remained on the car dashboard during the sexual assaults, the initial threat to kill was never repeated, and the victim testified that her decision to submit to the assault was influenced more by her confusion of how to escape than by the knife, we held that the "sex crimes were committed in the course of a criminal confinement perpetrated while armed with a deadly weapon, during which [defendant's] knife was at all times at least constructively under his control."  
Davis
, 520 N.E.2d 1271, 1274 (Ind. 1988).

The evidence in this case is more convincing than in 
Davis
 because the victim testified to threats made by defendant after the rape and to the fact that she was scared.
(footnote: 8)  Thus, even if defendant was not armed during the rape, he was armed when he broke and entered the home of the victims and was armed the first time that the victim saw him.  The
 
victim's
 
 duress was well  founded.  Since the weapon was at least "constructively under his control," there was sufficient evidence for a finding that defendant committed rape while armed with a deadly weapon. 

IV

Defendant claims that the trial court erred when it imposed enhanced and consecutive sentences.  We addressed and rejected this contention with respect to one of defendant's co-defendants in 
Greer v. State
, No. 71S00-9604-CR-272, (Ind. Sept. 4, 1997). For the reasons discussed therein, we affirm defendant's enhanced and consecutive sentences.

Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

FOOTNOTES
1:
Ind.Code § 35-42-1-1 (1993).

2:
Ind.Code § 35-42-2-1 (Supp. 1995).

3:
Ind.Code § § 35-41-5-1 and 35-42-1-1 (1993).

4:
Ind.Code § 35-42-4-1 (1993).

5:
See
 
Greer v. State
, No. 71S00-9604-CR-272 (Ind. Sept. 4, 1997); 
Mitchem v. State
, No. 71S00-9604-CR-00294 (Ind. Sept. 5, 1997)

6:
Codefendant Greer was found guilty of the Burglary charge.

7:
Pursuant to Ind. Code § 35-42-4-1, Rape is a Class A felony "if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to a person other than a defendant." 

8:
The victim testified that she heard defendant yell, "Man, get her down here, or somebody going to get a head-shot, and get her down here now," and when asked whether she was crying, she stated that she was too scared to cry because if she showed too much emotion they might automatically begin shooting.