Dominick WARDLAW and Victor Carrington, Appellants,

v.

STATE of Indiana, Appellee.

No. 383S105.

Supreme Court of Indiana.

Oct. 11, 1985.

Michael B. Haughee, Griffith, for appellants.

Linley E. Pearson, Atty. Gen. of Ind., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from two appellants, Dominick Wardlaw and Victor Carrington, who were each convicted by a jury of two counts of rape and two counts of robbery, resulting in the aggregate of eight criminal counts. Both appellants were convicted of two counts of rape, a class A felony, Ind.Code § 35–42–4–1

(Burns 1985 Repl.) and one count of robbery, a class A felony, Ind.Code § 35–42–5–1 (Burns 1985 Repl.). Appellant-defendant Carrington was convicted of an additional class A robbery count while appellant-defendant Wardlaw's second robbery conviction was a class B felony.

Appellant Wardlaw was sentenced to an eighty-year term of imprisonment. For the crimes committed against the first victim, Wardlaw received forty years (rape) and fifteen years (robbery), to be served concurrently. Wardlaw received a concurrent term of forty years each for the rape and robbery of the second victim, and this second concurrent term runs consecutively to Wardlaw's first concurrent term of imprisonment. Appellant Carrington was sentenced to a sixty-eight year imprisonment term. Carrington received a concurrent sentence of thirty-four years and fourteen years for the rape and robbery, respectively, of the first victim. He was sentenced to a concurrent term of thirty-four years each for the rape and robbery of the second victim, and this second concurrent term also runs consecutively to Carrington's first concurrent term of imprisonment.

Appellants raise four issues on appeal: (1) whether inadmissible evidence was permitted to be introduced; (2) whether the jury verdict was contrary to law; (3) whether a motion for severance should have been granted; (4) whether a juvenile confession was erroneously admitted into evidence.

These are the facts which tend to support the determination of guilt. At 3:00 p.m. on February 25, 1982, the second victim stopped at a pharmacy on her way home. As she started to get into her car, Wardlaw came up from behind the victim and pushed her into the car. Armed with a twelve-inch butcher knife, Wardlaw held the knife near her face and told her to shut up or he would kill her. She struggled with Wardlaw but he overpowered her, pushed her onto the front seat of her car, and unlocked the front passenger door to let Carrington into her car.

After driving around for a while, Wardlaw stopped the car and threw this victim onto the back seat. Wardlaw tore her clothes off and raped her. He continually beat this victim while he raped her.

After Wardlaw raped her, the appellants drove around again, parked the car, and then Carrington raped this victim. Carrington then left the car and Wardlaw raped her a second time, and took her wedding band. After Carrington returned to the car, the appellants drove to an alley and pushed the victim out of her car.

The first victim was raped by appellants at 3:00 p.m. on January 20, 1982. After completing business at a bank, this victim proceeded to go to her car. While she was closing her car door, one appellant pushed the door open, held a knife to her neck, and told her, "Be quiet, Bitch, or you're dead." He pushed her toward the middle of the front seat and unlocked the front passenger door to let the second appellant into the car.

After driving for a while the appellants took her money and some jewelry. Appellants told her to undress. After she was naked, appellants ordered her to climb over onto the back seat. While one appellant raped her the second appellant held her right leg over the front seat and inserted his finger in her rectum. After the first appellant raped her, they changed places and then the second appellant also raped her. Appellants then drove to an alley and told this victim to get out of her car.

Prior to trial, the second victim positively identified Carrington from a lineup and Wardlaw from a photographic array. Both victims identified each appellant in court. A witness from an Indiana toxicology laboratory testified that his analysis of vaginal swabs from both victims indicated the presence of semen. He stated that this conclusion was within the bounds of reasonable scientific certainty.

I

Appellant Wardlaw argues the trial court erroneously permitted the following evidence to be introduced at trial: (1) a police

officer's testimony regarding Wardlaw's redacted statement; (2) a foundation witness's testimony permitted in violation of a witness separation order; (3) a knife passed among the jurors before this exhibit was technically admitted into evidence.

■ Wardlaw first claims that Carrington's motion for mistrial should have been granted. This motion was predicated upon testimony regarding Wardlaw's redacted confession.

The prosecutor presented an exhibit, which was Wardlaw's redacted confession, to Officer Slay for identification purposes. Without any solicitation or deliberate inducement by the prosecutor, Slay responded, "It appears to be a reduced statement that I took from Wardlaw." The trial court immediately removed the jury from the courtroom. Rather than grant Carrington's motion for mistrial, the trial court decided to admit both Wardlaw's redacted and original confession for purposes of appellate review, but to read only the redacted version to the jury. The redacted version, by agreement of the parties, contains no inadmissible references to appellant Carrington.

There is no merit to Wardlaw's claim. The ambiguity inherent in Slay's comment, "reduced statement," which was not accompanied by any qualifying language, did not provide the jury with any basis for speculation as to the meaning of reduced in this context or as to the nature of what was reduced. There was therefore little potential for prejudice which would give rise to placing Wardlaw in a position of grave peril because of jury inferences regarding the nature of material reduced. In any event, we also note that Wardlaw did not preserve this issue for appellant review by making a contemporaneous objection.

Wardlaw's second evidentiary claim involves testimony by a foundation witness which was violative of a witness separation order. Appellant Carrington was granted a separation of witness order wherein witnesses were to retire from and remain outside the courtroom until called by the bailiff to testify. During the proceedings the State informed the trial court that the person who turned over to the police the knife used in the second rape was presently in the courtroom. The State requested permission to have this witness retire from the courtroom and to allow this witness to testify later. Over appellant's objection the trial court ruled the witness may later testify.

The State first realized the necessity of this foundation witness's testimony during the proceedings because of the difficulty the State was experiencing in getting this knife admitted. Since the knife was not going to be contradicted by the defense the court permitted the State's request. The trial court also directed the State to explain to the jury that this witness was previously present in the courtroom in violation of a witness separation order.

■ The trial court has discretionary power to allow a witness to testify notwithstanding a violation of a witness separation order, *Survance v. State* (1984), Ind., 465 N.E.2d 1076, unless appellant can show connivancy or procurement on behalf of the State. *Gorman v. State* (1984), Ind., 463 N.E.2d 254. This Court will not disturb the trial court's exercise of discretion unless there is a showing of prejudice tantamount to an abuse of discretion. *Wireman v. State* (1982), Ind., 432 N.E.2d 1343. In view of the unforeseen necessity for the foundation witness's testimony, lack of connivance by the State, and the State's explanation to the jury regarding the violation of the separation order, the trial court did not abuse its discretion by permitting the foundation witness to testify.

■ Wardlaw's third claim relates to the knife which was used in the second rape and robbery. When presented with Exhibit L for identification purposes, the second victim testified the knife looked like it could have been the knife appellants used against her. The State moved for admission of this knife but the trial court suggested that all evidence be introduced at once. The State once again moved for admission of this knife but Carrington ob-

jected on improper foundation grounds. The trial court suggested, at a bench discussion, that the State required an authenticating witness to establish the relationship between the crime and the knife. Subsequently, the foundation and admission of the knife used in the first rape and robbery was made. Later in the trial the necessary connection for the second knife was made by the foundation witness who found the knife in the second victim's car and by another witness who gave the knife to the police.

The trial court later instructed that some of the exhibits (photographs and knives) be passed to the jury for examination. Carrington's counsel approached the bench to question whether both knives had been admitted. Upon realizing that the Exhibit L knife had not been admitted yet the trial court told the jury that Exhibit L had not been admitted and ordered this exhibit back from the jury. The State then moved for admission of Exhibit L, the trial court admitted the knife as Exhibit 36, and then the knife was passed back to the jury. Proper and prompt curative measures were followed subsequent to the inadvertent presentation of this knife to the jury and therefore this error did not adversely affect appellant's substantial rights.

## II

Wardlaw and Carrington both argue the jury verdict was contrary to law because the jury verdict, without the allegedly inadmissible evidence, was not sustained by sufficient evidence. Wardlaw predicates his claim upon the evidence which he alleged to be improperly admitted (i.e., testimony regarding his redacted confession, testimony in violation of a witness separation order, and the pre-admission presentation of a knife to the jury). Carrington's argument is based upon the improper introduction of his confession. There is not merit to either appellant's argument because the underlying predicates for both Wardlaw's and Carrington's claims were deemed by this Court to be admissible evidence under Issue I and Issue IV, respectively.

## III

■ Carrington argues the trial court erred by denying his motion for severance. Carrington moved for a separate trial because the State intended to introduce a letter which Wardlaw had written to one of the rape victims.

The substance of this letter was generally to apologize to the first victim for what he had done to her and to ask her to drop the charges. Wardlaw did not refer to Carrington in his letter or to the fact that he had acted in conjunction with another person.

Wardlaw's letter constituted the practical equivalent of a redacted statement because of the similar tendency to prejudice Carrington's defense. Since the letter did not refer to Carrington, the trial court properly denied the motion for severance. Ind.Code § 35–34–1–11(b) (Burns 1985 Repl.).

## IV

■ Carrington, a juvenile, argues his confession was improperly admitted because he was not provided with the opportunity for a parental consultation prior to making his statement to the police and signing the waiver. There is no merit to appellant's argument.

The evidence most favorable to the State shows that Officer Barnes told appellant's parents that appellant was charged with rape and robbery. Before the consultation, Barnes also advised both appellant and his parents of his *Miranda* rights. Carrington was provided with an opportunity for a parental consultation before his statement was made. This consultation was in private and not within police presence. Barnes left appellant and his parents alone in the interrogation room for twenty to thirty minutes. After the parental consultation, Barnes asked for and received parental permission to talk with appellant. These procedures complied with those safeguards delineated in *Lewis v. State* (1972),

259 Ind. 431, 288 N.E.2d 138. There was no error in admitting appellant's confession. Judgment affirmed.

GIVAN, C.J., and PRENTICE, PIVARNIK and SHEPARD, JJ., concur.