## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2015, 7:28 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General of Indiana
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Allen Riley,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 30, 2015

Court of Appeals Case No.
49A02-1503-CR-151

Appeal from the Marion Superior Court, Criminal Division 1

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No.
49G01-1308-FA-051528

**Pyle, Judge.**

# Statement of the Case

In this appeal, Allen Riley ("Riley") appeals, following a joint jury trial with two co-defendants,[1] his convictions for Class A felony robbery,[2] Class B felony robbery,[3] Class B felony unlawful possession of a firearm by a serious violent felon,[4] Class B felony aggravated battery,[5] two counts of Class D felony criminal confinement,[6] and Class A misdemeanor carrying a handgun without a license.[7]  On appeal, Riley contends that the trial court erred by denying his motion to separate his trial from one of his co-defendants.  Specifically, he contends that he was prejudiced by testimony regarding his co-defendant's out-of-court statement.   Because the co-defendant's out-of-court statement referred only to the co-defendant's actions and did not reference or implicate Riley, we conclude that the trial court did not abuse its discretion by denying Riley's motion for a separate trial, and we affirm Riley's convictions.  However,

---

[1] Today, we also issue opinions in the appeals of Riley's co-defendants. *See Belk v. State*, 49A05-1503-CR-105; *Carter v. State*, 49A04-1503-CR-106.

[2] IND. CODE § 35-42-5-1.  We note that, effective July 1, 2014, a new version of this robbery statute was enacted and that Class A felony robbery is now a Level 2 felony.  Because Riley committed this crime in 2013, we will refer to the statute in effect at that time.

[3] I.C. § 35-42-5-1.  Pursuant to the 2014 version of the robbery statute, this Class B felony robbery offense is now a Level 3 felony.

[4] I.C. § 35-47-4-5.  Pursuant to the 2014 version of the unlawful possession of a firearm by a serious violent felon statute, this Class B felony offense is now a Level 4 felony.

[5] I.C. § 35-42-2-1.5.  Pursuant to the 2014 version of the aggravated battery statute, this Class B felony offense is now a Level 3 felony.

[6] I.C. § 35-42-3-3.  Pursuant to the 2014 version of the criminal confinement statute, these Class D felony offenses are now Level 6 felonies.

[7] I.C. § 35-47-2-1.

because the sentencing documents contained in the record indicate that the judgments of conviction were incorrectly entered, we remand this case to the trial court with instructions to correct these sentencing documents.

[2] We affirm and remand with instructions to clarify the sentencing documents.

# Issue

Whether the trial court abused its discretion by denying Riley's motion for a separate trial from one of his co-defendants.

# Facts[8]

[3] On July 10, 2013, around 5:00 p.m., Sylvester Kenney ("Kenney")[9] and Michael Spann ("Spann") were at Spann's house on North Chester Avenue in Indianapolis. Spann did not live in this house but used it to sell marijuana. After hearing a knock on the door, Kenney opened it, and Antwion Carter ("Carter") entered the house. Carter, who was armed with a gun with a laser, pointed it at Kenney and told him to get on the floor. Carter hit Spann on the head with the gun and told him to also get on the floor. Carter then took money from Kenney and Spann. When Spann's phone rang, Carter grabbed the earpiece from Spann and threatened to shoot him in the face if he told someone to come to the house.

---

[8] Riley does not challenge the sufficiency of the evidence supporting his convictions; therefore, we will not include a detailed recitation of the facts of his offenses.

[9] Kenney's nickname was "Tussy." (Tr. 71).

[4] Thereafter, Carter went by the window, made a phone call, and said, "I got these b****es -- y'all better hurry up." (Tr. 152). Riley and Troy Belk ("Belk"), who were both armed with guns, entered the house. Belk kicked Kenney in the face, demanded money from him, and told Kenney that they had his mother and would kill her if he did not reveal the location of the money. Kenney, who recognized Belk, asked him, "Troy, why you doin['] this -- Troy -- you know I ain't got no money[.]" (Tr. 165). Belk then grabbed a baseball bat that was in Spann's house and hit Kenney with it several times. During this time, Carter continued to keep his gun pointed at Kenney. Riley unplugged the surveillance cameras and stood over Spann with his gun pointed at him. When Spann looked up at Riley, he told Spann that he would shoot Spann in the face if Spann looked at him again.

[5] Thereafter, Carter and Belk dragged Kenney into the kitchen, continued to beat him, and asked him where the "stuff" was. (Tr. 264). Riley then grabbed Spann by the shirt, dragged him to the kitchen, and continued to hold his gun on him. Belk "ra[n]sack[ed]" the kitchen and rummaged through closets while Riley kept his gun pointed at Spann. (Tr. 158). Riley said that he had an "itchy trigger finger" and cocked his gun. (Tr. 158). At that same time, the doorbell rang. Belk and Riley ran to the door while Carter, still armed and pointing his gun at Kenney, stayed in the kitchen with Kenney and Spann. Belk said, "open the door and let him in -- we gonna kill him with these two." (Tr. 159).

[6] At that point, Kenney jumped on Carter and told Spann to run. Kenney punched Carter, who then shot Kenney in the face. Spann ran down the hall,

saw Kenney fall to the ground, and saw a "flame" or a bullet coming toward him. (Tr. 161). Spann then dove out the window and ran down the alley, yelling repeatedly, "They tryin['] to kill us." (Tr. 163).

[7] Later, when officers from Indianapolis Metropolitan Police Department ("IMPD") arrived on the scene, Spann gave them the name "Troy" as a suspect. (Tr. 84, 163, 165). Spann and Kenney were both taken to the hospital, and Kenney was placed into a medically-induced coma. In the days following the crimes, IMPD officers investigated the crimes and subsequently showed photographic arrays to Kenney and Spann, who identified Carter, Belk, and Riley as the perpetrators of the crimes.

[8] On August 7, 2013, the State charged Riley, individually, with seven counts. Then, on September 16, 2013, the State amended the charging information by including an additional count against Riley and by combining it with Carter and Belk's previously filed joint charging information. Thus, the amended joint information contained ten counts, eight of which applied to Riley: Count I, Class B felony aggravated battery (of Kenney); Count II, Class C felony battery (of Spann); Count III, Class A felony robbery (of Spann); Count IV, Class B felony criminal confinement (of Kenney); Count V, Class B felony criminal confinement (of Spann); Count VIII, Class B felony unlawful possession of a firearm by a serious violent felon; Count IX, Class A misdemeanor carrying a

handgun without a license with an enhancement to a Class C felony based on a prior conviction; and Count X, Class A felony robbery (of Kenney).[10]

[9] In September 2014, while Carter was incarcerated, he told Ronnie Archer ("Archer")—who was in the same cell block as Carter and dated Carter's cousin—about the robbery. According to Archer, Carter told Archer that he had shot somebody and "asked [him] how could somebody get shot in the head and don't die." (Tr. 341). Thereafter, Archer talked to the police about his conversation with Carter.

[10] On October 20, 2014, Belk filed a "Motion for Severance from Co-Defendant," in which he sought a trial separate from Carter.[11] (App. 72). In the motion, Belk asserted that the State was planning to introduce, in the joint trial, a letter that was purportedly written by Carter and that contained incriminating statements he had made.[12] In this letter, which Carter was alleged to have sent from jail, he asked someone to kidnap Kenney's mother in an effort to keep Kenney from testifying at the joint trial. The letter provided, in part, that "[s]omebody got to grab her [Kenney's mother] up and hold her until we go to

---

[10] Counts I-V and Count X were charged against Riley, Carter, and Belk. Counts VIII and IX were charged against Riley only. Count VI, Class D felony criminal confinement (of Lacie Willis), and Count VII, Class D felony intimidation (of Willis), were charged against Carter only.

[11] The parties refer to this motion and the motion made at trial as a motion to sever or a motion for severance. Because these motions are actually motions for a separate trial from Carter—as opposed to a motion for severance of offenses—we will refer to the motions as motions for a separate trial. *Compare* I.C. § 35-34-1-11(a) (relating to severance of offenses for one defendant) *with* I.C. § 35-34-1-11(b) (relating to separate trials for defendants).

[12] As a result of this letter, Carter was later charged with attempted kidnapping.

trial to make sure that he [Kenney] don't come because he been coming and he gonna keep coming unless we get her tied up somewhere and then we know we good at trial." (Ex. Vol. at 57). The letter also stated, "His mother is the key to freeing us." *Id.* Belk argued that admission of the letter in a joint trial with Carter would be prejudicial and would constitute a violation of his Sixth Amendment rights pursuant to *Bruton v. United States*, 391 U.S. 123 (1968).[13] Riley joined in the motion for a separate trial.

[11] On January 30, 2015, the trial court held a final pre-trial hearing, which included argument on the motion for a separate trial. Riley and Belk argued that the admission of the letter would create a *Bruton* issue due to Carter's reference to "we" and "us" contained in the letter and their inability to cross-examine Carter. (Tr. 494-97). The trial court ruled that the letter would not be admissible, and it denied Belk and Riley's joint motion for a separate trial.

[12] This pre-trial hearing was held on the Friday before the Monday trial. At the end of this hearing, the prosecutor, who had originally listed Archer on the State's witness list, told the trial court and the defendants that the State was not planning on calling Archer as a witness. However, during the weekend, the prosecutor contacted the defendants' attorneys to notify them that the State was going to call Archer as a witness.

---

[13] In *Bruton*, "the United States Supreme Court held that in a joint trial, admission of one defendant's confession that implicates another defendant is a violation of the second defendant's Sixth Amendment right to confront witnesses." *Fayson v. State*, 726 N.E.2d 292, 294 (Ind. 2000) (citing *Bruton*, 391 U.S. at 124-26). Because "[t]he confessing defendant cannot be required to take the stand, . . . the result is a denial of the other defendant's right to cross-examine." *Id.* (citing *Bruton*, 391 U.S. at 137).

[13]     The trial court held a two-day jury trial on February 2-3, 2015. Prior to trial, the State filed an amended charging information for jury purposes. In this joint information, the State charged the robbery of Spann as a lesser included B felony; omitted some of the charges, including the charge and enhancement that needed to be bifurcated; and renumbered the remaining charges. Thus, for the purposes of trial, the joint charging information contained the following seven charges: Count I, Class A felony robbery (of Kenney); Count II, Class B felony robbery (of Spann); Count III, Class B felony aggravated battery (of Kenney); Count IV, Class B felony criminal confinement (of Kenney); Count V, Class B felony criminal confinement (of Spann); and Count VI, Class A misdemeanor carrying a handgun without a license.[14]

[14]     Before the jury trial commenced, the State discussed its plan to present Archer as a witness. The prosecutor stated that Archer was not going to testify about the excluded letter and that, instead, he would "talk about conversations he had directly with Antwion Carter [while in jail] about Antwion Carter's case only and none of the other co-defendants." (Tr. 5). Riley then made an oral motion to separate his trial from Carter's trial. Riley acknowledged that Archer's testimony regarding Carter's out-of-court statement would "go[] only to Mr. Carter," but he argued that the testimony would be prejudicial. (Tr. 6). In the alternative, Riley sought to exclude Archer's testimony regarding Carter's

---

[14] All six counts were against Riley, while Counts I-V were against Carter and Belk. The State also dismissed the Class C felony battery (of Spann) charge against all the parties and the Class D felony criminal confinement and the Class D felony intimidation charges against Carter.

statement. Belk joined in Riley's oral motion for a separate trial. Belk also acknowledged that Archer's proposed testimony would "not speak of Troy Belk in any way" and that there "wo[uld]n't be an issue in regard to that[.]" (Tr. 6). Belk asked that he have a joint trial with Riley that was separate from Carter's trial. Riley's counsel argued that the defendants had just learned during the previous weekend that Archer's testimony was going to include the statement that Carter had asked how a person could get shot in the head and live. The State argued that Archer was a known witness and that the trial court could give a limiting instruction to the jury to inform them that Carter's statements could be used only against Carter and not against the other co-defendants. The trial court denied Riley and Belk's oral motion for a separate trial, finding that Carter's statement was a statement against his interest and that it was "not . . . prejudicial such that it should be excluded." (Tr. 11). The trial court stated that it could provide a limiting instruction if Riley and Belk wanted one.

[15] During the trial, Archer testified that he and Carter had been in the same cell block and had talked about "basketball, kids[,]" or "whatever[.]" (Tr. 340). Archer also testified that Carter had talked to him about a robbery[15] case and had told him that he had shot someone. Archer testified that Carter had "asked [him] how could somebody get shot in the head and don't die." (Tr. 341).

---

[15] At the beginning of Archer's testimony, the State initially asked Archer if he had talked to Carter about a "burglary" case, (Tr. 340), but when the State asked Archer about Carter's specific statements, the prosecutor referred to a "robbery" case. (Tr. 341).

None of the defendants objected to Archer's testimony. Neither Riley's attorney nor Belk's attorney cross-examined Archer.

[16]  The trial court gave the following preliminary and final jury instruction:

> You should give separate consideration to each accused. Each is entitled to have his case decided on the evidence and the law that applies to him. Any evidence which is limited to one accused must not be considered by you as to any other accused.

(App. 90) (capitalization of some letters put into lower case).

[17]  The jury found Riley guilty as charged. Riley waived his right to a jury trial on the bifurcated charges of Class B felony unlawful possession of a firearm by a serious violent felon and the Class C felony enhancement to the carrying a handgun without a license charge. During a subsequent bench trial, the trial court found Riley guilty of the Class B felony unlawful possession of a firearm by a serious violent felon charge, and the State dismissed the Class C felony enhancement.

[18]  The trial court held a joint sentencing hearing for Riley and his two co-defendants. The trial court ordered that Riley's sentences on his convictions be served concurrently and imposed an aggregate executed sentence of thirty-five (35) years, with thirty-two (32) years in the Department of Correction and three

years in community corrections.[16]  Riley now appeals the trial court's denial of his motion for a separate trial.

# Decision

## *Motion for a Separate Trial*

[19]  Riley argues that the trial court erred by denying his motion for a trial separate from Carter.

[20]  A defendant has "no absolute right to a separate trial[.]"  *Rouster v. State*, 705 N.E.2d 999, 1004 (Ind. 1999) (citing *Lampkins v. State*, 682 N.E.2d 1268 (Ind.1997), *modified on reh'g* by 685 N.E.2d 698 (Ind. 1997)), *reh'g denied.* INDIANA CODE § 35-34-1-9 permits the joinder of two or more defendants in a single prosecution.  *See also Lampkins*, 682 N.E.2d at 1272.  INDIANA CODE § 35-34-1-11(b), however, allows a defendant to move for a separate trial.  This statutory provision pertaining to a separation of trials for co-defendants provides:

> Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect:

---

[16] Because the record before us reveals numerous irregularities relating to sentencing, we will discuss the specifics of the trial court's sentencing after we address Riley's issue raised on appeal.

(1) a joint trial at which the statement is not admitted into evidence;

(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

(3) a separate trial for the moving defendant.

*In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant.*

I.C. § 35-34-1-11(b) (emphasis added). Here, there is no dispute that the latter part of the statute is applicable to the facts of this case. Indeed, the challenged testimony did not "make reference" to Riley; therefore, the first part of the statute, which sets forth the three options for the prosecutor, is not implicated. *See id.*

[21] "The trial court has discretion to grant or deny a motion for separate trials." *Lee v. State*, 684 N.E.2d 1143, 1147 (Ind. 1997) (citing *Gordon v. State,* 609 N.E.2d 1085, 1088 (Ind. 1993); *Underwood v. State,* 535 N.E.2d 507, 514 (Ind. 1989), *cert. denied*, *reh'g denied*). "An abuse of discretion occurs when a court denies a defendant's properly filed motion for separate trials and the parties' defenses are mutually antagonistic to such a degree that acceptance of one party's defense precludes the acquittal of the other." *Rouster*, 705 N.E.2d at 1004 (citing *Lampkins*, 682 N.E.2d 1272). "The soundness of the trial court's discretion is measured by what actually transpired at trial rather than what was

alleged in the motion[.]" *Averhart v. State*, 470 N.E.2d 666, 680 (Ind. 1984), *cert. denied*. Thus, on review, we consider the events that actually occurred at trial to determine whether a motion for a separate trial should have been granted. *See Rouster*, 705 N.E.2d at 1004-05. *See also Lampkins*, 682 N.E.2d at 1272. "A defendant is not, however, entitled to a separate trial merely because a co-defendant implicates that defendant." *Rouster*, 705 N.E.2d at 1004. *See also Lee*, 684 N.E.2d at 1147 (holding that there is "no ground for reversal simply because one of the codefendants implicated the defendant"). "[T]he defendant bears the burden of showing that the denial of a separate trial subjected him to such serious prejudice that he was denied a fair trial." *Averhart*, 470 N.E.2d at 680. *See also Castro v. State*, 580 N.E.2d 232, 234 (Ind. 1991) ("When appellant seeks a reversal claiming an abuse of discretion in the denial of his motion for separate trial, he must show actual prejudice.").

[22] Here, Riley does not contend that his defense was mutually antagonistic from Carter's. Indeed, at trial, all three defendants had the same defense – that they were innocent and were misidentified by Spann and Kenney. As he did at trial, Riley acknowledges on appeal that "Archer's testimony that Carter had implicitly admitted to shooting Kenney did not implicate [Riley] directly." (Riley's Br. 14). Nevertheless, Riley contends that the trial court should have separated his trial from Carter's trial, arguing that he was prejudiced by Archer's testimony regarding Carter's admission that he had shot someone. Specifically, in support of his argument that he was prejudiced, Riley asserts that Carter's statement was an admission of guilt that bolstered the credibility of

Spann and Kenney's identification of Carter as one of the perpetrators of the crime, which "in turn bolstered the credibility of their identification of Riley" as one of the perpetrators. (Riley's Br. 14). Riley, however, did not object to Archer's testimony at trial, let alone make an objection that it was improper bolstering, and he did not cross-examine the witness. As a result, he has waived review of this issue. *See, e.g.*, *Morgan v. State*, 400 N.E.2d 111, 114 (Ind. 1980) (holding that the defendant waived challenge to the trial court's denial of his motion for a separate trial from a co-defendant by failing to move for a separate trial and that, nonetheless, his argument that he was prejudiced by a witness was also waived because the defendant did not object to her testimony, ask that the testimony be stricken, or cross-examine the witness).

[23] Waiver notwithstanding, Riley's argument that he was prejudiced ultimately relies on his contention that there was a lack of evidence regarding his involvement in the crime. Riley acknowledges that Spann and Kenney testified that he was one of the suspects involved in the crimes against Spann and Kenney, but he then challenges their testimony as "not . . . sufficiently credible[.]" (Riley's Br. 17). Riley does not raise an argument challenging the sufficiency of the evidence. However, this challenge to the credibility or the weight that the jury should have given Spann's and Kenney's testimony is nothing more than an inadequate attempt at a sufficiency argument and an invitation to reweigh the evidence and reassess the jury's credibility determination, which we will not do. *See Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

[24] After reviewing what happened at trial, we conclude that Riley has not shown that the trial court's denial of his oral motion for a separate trial "subjected him to such serious prejudice that he was denied a fair trial." *See Averhart*, 470 N.E.2d at 680. "It is the defendant's burden to show that a fair trial could not otherwise be had, and 'not merely that severance would enhance the prospects for acquittal.'" *Lee*, 684 N.E.2d at 1149 (quoting *Blacknell v. State*, 502 N.E.2d 899, 905 (Ind. 1987) (citing *Broadus and Dunville v. State*, 487 N.E.2d 1298, 1302 (Ind. 1986)), *reh'g denied*). When assessing what occurred at trial, we bear in mind that Riley does not have "a constitutional right to be protected from damaging evidence." *Lee*, 684 N.E.2d at 1147 (quoting *Castro*, 580 N.E.2d at 235 (citing *Smith v. State*, 474 N.E.2d 973 (Ind. 1985))).

[25] On the morning of trial, when moving for a separate trial, Riley acknowledged that Archer's testimony would refer to Carter only and not to him, but he argued generally that the testimony would be prejudicial. The trial court ruled that a separate trial was not necessary because Archer's testimony was not prejudicial, and it instructed the jury, in relevant part, that "[a]ny evidence which is limited to one accused must not be considered by [them] as to any other accused." (App. 90) (capitalization of some letters put into lower case). During the trial, when Archer testified about Carter's admission, Riley did not object to Carter's testimony and did not cross-examine him. Indeed, Archer's testimony about Carter's statement did not mention Riley by name nor did it refer to any action by Riley. Instead, Carter's out-of-court statement referred only to his own actions, i.e., *Carter* shot someone in the head. Carter's

statement did not indicate that he was with anyone or had acted in conjunction with anyone else. Additionally, both victims, Spann and Kenney, testified and identified Riley as one of the perpetrators of the offenses against them. Considering the events that actually occurred at trial, we conclude that the trial court did not abuse its discretion by denying Riley's motion for a separate trial. *See, e.g.*, *Brock v. State*, 540 N.E.2d 1236, 1240 (Ind. 1989) (rejecting a defendant's argument that he was prejudiced by a co-defendant's statement because the statement did not attribute any act to the defendant), *reh'g denied*; *Wardlaw v. State*, 483 N.E.2d 454, 457 (Ind. 1985) (holding that a defendant was not entitled to a separate trial based on the co-defendant sending an apology letter to the victim because the letter did not refer to the defendant or that the co-defendant had acted in conjunction with another person). *See also Hopper v. State*, 539 N.E.2d 944, 947 (Ind. 1989) (affirming the trial court's denial of the defendant's motion to separate his trial from his co-defendant, who was absent from the trial, where the trial court gave the jury an almost identical instruction as the trial court did in this case).[17]

---

[17] Additionally, Riley appears to argue that the trial court's denial of his oral motion for a separate trial—which was based on an argument that Archer's testimony of Carter's statement prejudiced him—was erroneous because it resulted in a *Bruton* violation and a denial of his right to cross-examination. To support his argument, he relies on *Fox v. State*, 384 N.E.2d 1159 (Ind. Ct. App. 1979), for the proposition that a defendant can be implicated by a co-defendant's confession that does not specifically refer to him by name. *See Fox*, 384 N.E.2d at 1170 (stating that "it is our opinion that the *Bruton* rule applies with equal force to all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement"). We find such argument is waived because Riley's oral motion for a separate trial was not based on an alleged *Bruton* violation. *See Lampkins*, 682 N.E.2d at 1274 (holding that "a defendant may not present one ground for an objection at trial and advance another ground on appeal" and that an attempt to raise a new ground on appeal will result in waiver on appeal). Waiver notwithstanding, the facts of this case do not involve a *Bruton* violation because Archer's testimony that Carter admitted to shooting a guy in the head did

## *Sentencing*

[26] The parties to this appeal make no argument or challenge to the trial court's sentencing in this case. Nevertheless, we are compelled to discuss it because there is a lack of clarity in the record regarding the entry of judgments of conviction and corresponding sentencing.

[27] The record is clear that the jury found Riley guilty as charged in the amended charging information that was filed just prior to trial. Specifically, the jury found Riley guilty of: Count I, Class A felony robbery (of Kenney); Count II, Class B felony robbery (of Spann); Count III, Class B felony aggravated battery (of Kenney); Count IV, Class B felony criminal confinement (of Kenney); Count V, Class B felony criminal confinement (of Spann); Count VI, Class A misdemeanor carrying a handgun without a license. Also, in a bifurcated proceeding, the trial court found Riley guilty of Class B felony unlawful possession of a firearm by a serious violent felon.

[28] At the sentencing hearing, the trial court discussed how it would possibly handle potential double jeopardy concerns with the convictions. Specifically, the trial court stated:

---

not facially implicate Riley. *See Fayson*, 726 N.E.2d at 294 (explaining that a co-defendant's statements violate *Bruton* only if they "facially incriminate" another defendant) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *Brock*, 540 N.E.2d at 1240 (explaining that "[t]he United States Supreme Court, however, has declined to extend *Bruton* to situations such as this one, which do not involve facially incriminating declarations") (citing *Richardson*, 481 U.S. 200).

> Before we get to argument I just want to get the perspective and I should have given all -- all the parties a head's up on this -- how do you view running these counts -- the -- if I'm runnin[g] under that A those robberies -- that robbery becomes a C. The confinements bump down to D's and then the agg batt really is -- is really part of parcel of that A so I don't know how you view the agg batt -- does it reduce to a C or do you think that stands on its own?

(Tr. 448). The prosecutor pointed out that the robbery conviction for the robbery of Kenney was a Class A felony conviction and that the robbery conviction for the robbery of Spann was a Class B felony conviction. The parties then agreed that the Class B felony aggravated battery conviction would "disappear" because it was an element of the Class A robbery conviction. (Tr. 450). The trial court then stated it would "merge 3 into 1 and we'll sentence on the remaining counts." (Tr. 451). Thereafter, the trial court orally pronounced the sentence on the Class A felony robbery conviction for Riley and his co-defendants. For Riley, the trial court imposed a thirty-five (35) year executed sentence, with thirty-two (32) years in the Department of Correction and three (3) years in community corrections. The trial court stated that, for each of the defendants, it would be ordering the remaining sentences to be served concurrently to the sentence on this Class A felony robbery conviction. The trial court, however, did not orally pronounce a sentence on the remaining counts during the sentencing hearing. Instead, the trial court stated that it would "break down all the remaining counts in the sentencing [order] but [that it was] running them all as one larger criminal episode[.]" (Tr. 484). The trial

court stated that while there were "two victims and [it] normally like[d] to apportion per victim -- [it would] not in this case." (Tr. 484-85).

[29] From reading the transcript of the sentencing hearing, we observe that, ultimately, the trial court merged Riley's Class B felony aggravated battery conviction into his Class A felony robbery conviction and imposed a thirty-five (35) year sentence on that Class A felony conviction. A review of the sentencing hearing also reveals that the trial court intended to enter sentences on the Class B felony criminal confinement convictions as Class D felonies and to enter sentences on the Class B felony robbery (of Spann) conviction, the Class B felony unlawful possession of a firearm by a serious violent felon conviction, and the carrying a handgun without a license conviction. Additionally, as discussed above, the trial court stated that it would order all sentences be served concurrently.

[30] However, the sentencing order, abstract of judgment, and chronological case summary do not reflect this intended sentencing. Specifically, these court documents indicate that the trial court entered the following judgments of conviction and imposed the following sentences: (1) robbery of Kenney as a Class A felony with a sentence of thirty (35) years; (2) robbery of Spann as a Class A felony with a "Finding of Guilty of a Lesser Included" and with a sentence of fifteen (15) years; (3) Class B felony aggravated battery that was "[m]erged" into the Class A felony robbery of Kenney conviction; (4) Class B felony criminal confinement of Kenney with a sentence of 545 days; (5) Class B felony criminal confinement of Spann with a sentence of 545 days; (6) Class B

felony unlawful possession of a firearm by a serious violent felon with a sentence of fifteen years; (7) Class A misdemeanor carrying a handgun without a license with a sentence of one year. (App. 17, 19).

[31]     These sentencing documents, therefore, have three issues that need to be corrected. First, in regard to the trial court's act of merging the Class B felony aggravated battery into the Class A felony robbery, which were convictions for which the trial court seems to have entered judgments of conviction, we note that "[a] trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation" and that such a violation cannot be remedied by the "practical effect" of merging after a conviction has been entered. *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied*. *See also Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) (explaining that "a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned"). Because it appears from the record that the trial court entered judgment of conviction on Class B felony aggravated battery prior to merging this conviction, we remand this cause to the trial court with instructions to vacate Riley's judgment of conviction on this offense.

[32]     Second, the trial court's sentencing documents need to be corrected to reflect that Riley was convicted of robbery of Spann as a Class B felony. Prior to the commencement of trial, the robbery charge against Spann was amended to a Class B felony charge. The jury found Riley guilty of this robbery as Class B felony, and the trial court sentenced him on the conviction to fifteen years.

However, the sentencing documents indicate that the judgment of conviction was entered as a Class A felony. The entry of judgment of conviction as a Class A felony with a sentence of fifteen years is contrary to the statutory sentencing range set forth for a Class A felony. *See* IND. CODE § 35-50-2-4 (providing that the sentencing range for a Class A felony is between twenty (20) and fifty (50) years). Thus, the abstract of judgment, sentencing order, and CCS should be corrected to reflect that the judgment of conviction of this robbery of Spann was entered as a Class B felony.

[33] Third, the trial court's sentencing documents need to be corrected to reflect that the trial court entered judgments of conviction on the criminal confinement convictions as Class D felonies instead of Class B felonies. While the jury found Riley guilty of these criminal confinement convictions as Class B felonies, the trial court sentenced him on these as Class D felonies due to double jeopardy concerns and imposed a sentence of 545 days on each conviction. However, the sentencing documents indicate that the judgments of conviction on these criminal confinement offenses were entered as Class B felonies. Again, the entry of judgment of conviction as a Class B felony with a sentence of 545 days is contrary to the statutory sentencing range set forth for a Class B felony. *See* IND. CODE § 35-50-2-5 (providing that the sentencing range for a Class B felony is between six (6) and twenty (20) years). Thus, the abstract of judgment, sentencing order, and CCS should be corrected to reflect that the judgments of conviction of these criminal confinement offenses were entered as Class D felonies.

[34]     In summary, the sentencing order, abstract of judgment, and chronological case summary should be corrected to reflect that:  (1) the Class B felony aggravated battery conviction was vacated; (2) Riley was convicted of robbery of Spann as a Class B felony and that the trial court entered judgment of conviction as a Class B felony; and (3) the trial court entered judgments of conviction and sentences on the criminal confinement convictions as Class D felonies instead of Class B felonies.[18]

[35]     Finally, we express our concern with the trial court's failure to impose and pronounce sentencing on all of Riley's convictions during the sentencing hearing.  INDIANA CODE § 35-38-1-5 provides:

> When the defendant appears for sentencing, the court shall inform the defendant of the verdict of the jury or the finding of the court. The court shall afford counsel for the defendant an opportunity to speak on behalf of the defendant. The defendant may also make a statement personally in the defendant's own behalf and, before pronouncing sentence, the court shall ask the defendant whether the defendant wishes to make such a statement. *Sentence shall then be pronounced, unless a sufficient cause is alleged or appears to the court for delay in sentencing*.

---

[18] Additionally, we note that the abstract of judgment and sentencing order contain all original charges filed against Riley, even though some of the charges were ultimately dismissed and he was not tried on some of the other charges.  We acknowledge that the abstract of judgment form, which indicates that it is a "State Form" from the Indiana Department of Correction, appears to add to the confusion in the sentencing. (App. 17).  The abstract of judgment form, in Part I, requires a trial court list the "charge[s]" against a defendant, instead of the convictions. (App. 17).  Then, Part II of the form requires the trial court to list the sentences "[a]s a result of the above convictions[.]" (App. 17).  However, the charges listed in Part I are not convictions.  Because this abstract of judgment form is used by the Department of Correction for incarceration duration and subsequent release date information, only the actual judgments of conviction and resulting sentences are relevant.

(Emphasis added). The record does not reveal "a sufficient cause" for the delayed pronouncement of sentencing as the parties did not request a delay in the pronouncement of sentencing nor did the trial court provide a reason why it was waiting to "break down all the remaining counts in the sentencing" order. (Tr. 484). At the same time, the parties did not object when the trial court failed to pronounce the remaining sentencing during the hearing. Therefore, we will not remand for a new sentencing hearing. However, we would encourage the trial court, for all future sentencing, to pronounce sentencing on *all* convictions during a sentencing hearing in accordance with INDIANA CODE § 35-38-1-5.

Affirmed and remanded with instructions.

Vaidik, C.J., and Robb, J., concur.